IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEED NIFAS, | : | |
| Plaintiff, | : | 1:19-cv-0538 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| LT BELLES, *et al.*, | : | |
| Defendants. | : | |

## **MEMORANDUM**

### **November 19, 2020**

**I.    BACKGROUND**

Plaintiff Rasheed Nifas ("Nifas"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC") who is incarcerated at the State Correctional Institution at Coal Township ("SCI-Coal-Township"), commenced this action on March 6, 2019, pursuant to 42 U.S.C. §1983, in the Court of Common Pleas of Northumberland County alleging violations of the First and Fourteenth Amendments. Defendants removed the action to this Court on March 27, 2019. (Doc. 1). Named as Defendants are Corrections Officers Belles, Benza, Mark, Murphy, Piepzowski, Carpentier, and Psychology Services Specialists Martin and Kluck-Leonowicz.

Presently pending are cross-motions (Docs. 21, 24) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants motion will be granted and Plaintiff's motion will be denied.

## II.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008).  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he non-moving party 'may not rely merely on allegations or denials in its own

3

pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## III.   STATEMENT OF MATERIAL FACTS

### A.   Privileged Correspondence

In September 2018, the DOC changed policy DC-ADM 803, which dictates

the manner in which incoming privileged and non-privileged mail is managed at the DOC's correctional institutions statewide. (Doc. 25, ¶ 8). The policy tasked corrections officers with maintaining a log of incoming privileged correspondence, photocopying the privileged correspondence in the presence of the inmate, giving the inmate the photocopy, and retaining the original in a sealed envelope and depositing it inside a locked box. (*Id.* at 9). Defendants declare that they were unable to access the locked box. Coal Township. (*Id.* at 10). They also declare that they never read Nifas' legal mail or witnessed anyone else reading his legal mail. (Docs. 27-1 through 27-7, ¶¶ 8, 9).

In August 2019, Nifas refused to sign a form indicating whether he would like his originals returned to sender or destroyed by the DOC. (Doc. 25, ¶¶ 12, 13). Because of the pendency of the current action, his original documents were not destroyed and remain sealed and in the possession of the DOC. (*Id.* at 13-15).

Nifas asserts in his counterstatement of material facts contained in his brief in support of his motion for summary judgment, and in opposition to Defendants' motion for summary judgment, that on September 13, 15, 25, 29, October 9, 11, 16, 17, 19, 24, 25, 31, November 1, and December 12, and 14, of 2018, Defendant Belles reproduced legal documents, kept the originals to read outside his presence, and refused to allow him to send legal documents to an address or return the legal

5

documents to the sender. (Docs. 30, 31, pp. 4-7). Defendant Benza handled his legal mail in this manner on September 15, 25, October 25, and December 15, of 2018. (*Id.* at 4, 6, 7). Defendant Mark engaged in this conduct on September 29, 2018. (*Id.* at 4). Defendant Piepzowski handled his mail in this manner on September 13, October 24, 31, November 16, and December 12, 2018. (*Id.* at 4-7). And Defendant Carpentier engaged in this conduct on October 16, 2018. (*Id.* at 5).

### B.  Medical Information

In accordance with standards set forth in DOC policy § 13.8.1, Access to Mental Health Care Procedures Manual, Section 15 – Certified Peer Specialist (CPS) Initiative, the DOC trains eligible inmates at each state correctional facility to facilitate staff's efforts to effectively support inmates with mental or emotional concerns. (Doc. 25, ¶¶16, 17; Doc. 32, ¶¶ 16, 17; Doc. 27-8). Although they are not licensed psychologists, they are required to sign a "CPS Confidentiality Acknowledgement Form" agreeing that they will maintain the confidentiality of all inmate medical and/or mental health information. (*Id.* at 18; *Id.* at 18; *Id*. at 6).

While housed in the restricted housing unit ("RHU") Nifas contends that Defendants Martin and Kluck-Leonowicz allowed CPS workers to be present during personal discussions held at his cell door that concerned his mental health. (*Id.* at 19; *Id.* at 19). He "avers that the content discussed included mental health

medications, suicide attempts, and other personal information." (Doc. 31, p. 18, citing Doc. 1, ¶¶ 38-42, 47, Exhibits 6, 7). He does not indicate in any filing that any of his medical information was disbursed to anyone other than the psychologist and the CPS worker. (*Id.* at 20, 21; Doc. 32, 20, 21).

In his counterstatement of material facts, he states that Defendants Martin and Kluck-Leonowicz infringed upon his confidential mental health treatment information by refusing to communicate with him outside of an inmate worker['s] presence…." (Doc. 32, ¶¶ pp. 7, 8).

## IV.   **DISCUSSION**

### A.   **Privileged Correspondence**

Prisoners "do not forfeit their First Amendment right to use of the mails," particularly with respect to privileged "legal mail" exchanged with counsel, and a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated in part by *Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *Taylor v. Oney*, 196 F.App'x. 126, 128 (3d Cir. 2006) (reaffirming holding in *Bieregu* that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner."). A prisoner must allege that the

interference with his legal mail was done according to a "pattern and practice." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice ... of opening legal mail outside the presence of the addressee inmate ... impinges upon the inmate's right to freedom of speech."). And a prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." *See, e.g., Jones*, 461 F.3d at 359 (distinguishing between a "pattern and practice" and an "explicit policy"). Significantly, a prisoner need not allege or prove any "actual injury" beyond the direct injury to their First Amendment right to use the mails. *Taylor*, 196 F.App'x. at 128.

    Nifas does not contend that Defendants opened his legal mail outside his presence. Rather, he asserts that, after they opened his legal mail in his presence, they "kept the original documents to read." Defendants acknowledge that, on the dates identified by Nifas, pursuant to a new DOC policy, they engaged in the practice of maintaining a log of incoming privileged correspondence, opening and photocopying privileged correspondence in the presence of the inmate, providing the inmate with a photocopy of the correspondence, and placing the original document in a sealed envelope and depositing it in a locked box. They declare that they did not have access to the original documents after photocopying as they were placed in a locked box which they were unable to access. They also declare that

8

they did not read any of Nifas' legal mail. Nor did they witness anyone else reading his privileged mail.

Nifas solely relies on the statements made in his verified complaint and the attached administrative grievance documents in which he repeatedly alleges that Defendants kept the original documents to read. (Doc. 1-4).[1] However, he fails to come forward with any evidence that goes beyond the conclusory and unsupported allegations and lend support to his claim that Defendants engaged in a pattern or practice of actually reading his legal mail. *See Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

With regard to his contention that Defendants refused to allow him to send legal documents to a particular address or return the legal documents to the sender, it is undisputed that he refused to sign a form indicating whether he would like his originals returned to sender or destroyed by the DOC. (Doc. 25, ¶¶ 12, 13). It is also undisputed that the original documents were not destroyed and remain sealed and in the possession of the DOC. (*Id.* at 13-15).

Summary Judgment must be granted against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[1] We recognize that a verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge. *Wilson v. Maben*, 676 F.Supp. 581, 583 (M.D.Pa.1987); *see Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir.1985).

9

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Nifas bears the burden of proof at trial, and he has not presented any evidence that Defendants Belles, Benza, Mark, Murphy, Piepzowski, or Carpentier read his legal mail or refused to allow him to send legal documents to an address or return the legal documents to the sender. He cannot rest on mere allegations. Instead, he must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995). Nifas fails to meet his burden. Consequently, his motion for summary judgment will be denied and Defendants' motion will be granted.

To the extent he challenges the constitutionality of the revised mail policy, he fails to allege or demonstrate that Defendants had any policy making authority. Courts recognize that liability under §1983 may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). To establish a claim against a policymaker under §1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation. *Id.* at 1114. The record is

devoid of evidence that any of the named Defendants had final policymaking authority with regard to the DOC mail policy Nifas challenges.

### B. Medical Information

Prisoners maintain a substantive due process right to privacy in their medical information. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir.2001) ("The right to nondisclosure of one's medical information emanates from a different source and protects different interests than the right to be free from unreasonable searches and seizures."). Not all disclosures of medical information will in fact violate a prisoner's right to privacy in his medical information; it "may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.' " *Id.* at 317 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "unusual medical condition[s], which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through "humor or gossip[.]" *Smith v. Hayman*, No. CIV.A. 09-2602 PGS, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (citing *Powell v. Shriver*, 175 F.3d 107, 112 (2d Cir. 1999) (tying the availability of a §

11

1983 claim for invasion of medical privacy to conditions such as HIV and Gender Identity Disorder), *aff'd,* 489 F.App'x. 544 (3d Cir. 2012)). In *Delie*, for example, an HIV-positive inmate claimed that his constitutional right to medical privacy was violated by the following procedures: prison nurses announced his medications loud enough that other prisoners could hear and infer his condition; prison staff informed escorting officers of his medical condition; and during physician visits, the clinic room door was kept open, allowing officers, inmates, and guards to see and hear Doe and the treating physician. 257 F.3d at 311-12. More recently, in *Smith v. Hayman*, 489 F.App'x. 544 (3d Cir. 2012), a prisoner asserted a claim for deprivation of his constitutional right to medical privacy related to his attempt to be diagnosed and treated for Gender Identity Disorder.

    Nifas contends that Defendants Martin and Kluck-Leonowicz, violated his right to privacy by discussing his personal mental health issues and concerns in the presence of CPS workers.  CPS workers are trained and certified inmate peer specialists who facilitate prison staff's efforts to effectively support inmates with mental or emotional concerns.  Although they are not licensed psychologists, they are required to sign a form agreeing that they will maintain the confidentiality of all inmate medical and/or mental health information.  Nifas does not assert that the CPS workers improperly disseminated or disclosed any of his medical or mental

health information, either inadvertently or through gossip, such that he was exposed to ridicule, discrimination, or other harm. The mere presence of the CPS workers, who were indisputably bound by confidentiality, in the absence of improper or inadvertent dissemination or disclosure of sensitive health information, simply does not rise to the level of a constitutional violation. Defendants are entitled to an entry of summary judgment on this claim.

## V.     CONCLUSION

Based on the foregoing, Plaintiff's motion motion for summary judgment will be denied; Defendants' motion will be granted.

An appropriate Order will issue.